# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re
**CNL HOTELS & RESORTS, INC.**
**Securities Litigation**

**Case No.  6:04-cv-1231-Orl-31KRS**

**(Consolidated with Case No.  6:04-cv-1341-Orl-19JGG)**

---

# ORDER

This matter comes before the Court on Motions to Dismiss filed by various Defendants concerning the Plaintiffs' claim in Count IV of their Amended Complaint that these Defendants breached their fiduciary duty to CNL and to CNL's shareholders.[1]  By a previous Order (Doc. 166), the Court dismissed this same claim and granted the Plaintiffs leave to amend, which they did by filing their Amended Complaint (Doc. 172).  The Advisor and the Individual Defendants again move to dismiss this claim.[2]  The parties have all filed supporting memoranda,[3] and the

---

[1] This Order is limited to the issue of the Plaintiffs' claim of breach of fiduciary duty.  By separate Order dated September 9, 2005, the Court dismissed Count III of the Amended Complaint. (Doc. 204).  The Plaintiffs' remaining claims will be addressed by a separate Order in due course. (*See* Doc. 205).

[2] *See* Docs. 185 and 186, CNL's Motion to Dismiss and Memorandum in support thereof, respectively; Doc. 187, Lawrence Dustin, Craig McAllaster, Charles Adams and Robert Parsons' Joinder in CNL's Motion; Doc. 188, John Griswold and Thomas Hutchison's Joinder in CNL's Motion and Memorandum of Law; Doc. 190, James Seneff and Robert Bourne's Motion to Dismiss; Docs. 191 and 192, CNL Hospitality Corporation's Motion to Dismiss and Memorandum in support thereof. *See also* the Defendants' Consolidated Reply Brief at Doc. 200.

[3] The Plaintiffs' Memorandum in opposition to the Defendants' Motions appears at Doc. 197.

Court held a hearing on this matter on September 9, 2005, at which the parties presented oral argument.  For the reasons stated herein, the Defendants' Motions to Dismiss are granted.

I.      **Background**

A. Facts

The facts underlying this case are set out in detail in the Court's Order of May 9, 2005, (Doc. 166), familiarity with which is presumed at present.  Briefly, this case involves the claims of investor plaintiffs who purchased CNL stock.  The Plaintiffs allege, *inter alia*, that they acquired their CNL securities pursuant to CNL's prospectuses and registration statements, that those documents contained materially false and misleading statements, and that the Plaintiffs have been damaged as a result.[4]

B. Defendants

The Plaintiffs bring Count IV against CNL Hospitality Corporation ("CHC" or the "Advisor") and a group of individuals known as the "Individual Defendants."[5]  The Advisor is a Florida corporation that provides management, advisory and administrative services to CNL.  The Advisor conducts CNL's day-to-day operations, under the authority delegated to it by CNL's Articles of Incorporation, an Advisory Agreement, and policies established by CNL's Board of Directors (the "Board").  CNL originally entered into the Advisory Agreement with the Advisor on July 9, 1997, and that Agreement has been renewed annually for successive one year terms.  Under

---

[4] Because the Court dismissed the claims of the Proxy Class in Count III, the Court does not address the allegations related to Count III to the extent those same allegations are asserted to be relevant to the derivative action claim in Count IV.

[5] The Advisor and the Individual Defendants will be collectively referred to, where appropriate, as the "Defendants."

that Agreement, the Advisor locates, analyzes and negotiates investment opportunities for CNL,

arranges financing for CNL, administers CNL's bookkeeping and accounting functions, consults

on policy decisions made by CNL's Board, and renders a variety of other services to CNL.  In

exchange for its services, the Advisor is entitled to receive fees, including asset management fees,

acquisition fees, and development fees.[6]  All of the Advisor's officers, and a majority of its

directors, are also officers and/or directors of CNL.

 The Individual Defendants include James Seneff, Jr. ("Seneff"), Robert A. Bourne

("Bourne"), Thomas J. Hutchison III ("Hutchison"), John A Griswold ("Griswold"), Charles E.

Adams ("Adams"), Lawrence A. Dustin ("Dustin"), Craig M. McAllaster ("McAllaster"), and

Robert E. Parsons ("Parsons").  Seneff is the Chairman of the Board of CNL and owns 15.3% of

the outstanding common stock of the Advisor.[7]  Bourne is the Vice-Chairman of CNL's Board and

also owns 15.3% of the Advisor's outstanding common stock.  Hutchison is the Chief Executive

Officer of CNL, and the co-Chief Executive Officer and a director of the Advisor.  In the past, he

has served as both the president and executive vice president of both CNL and the Advisor.  Along

with Griswold and three other individuals, he owns 6.1% of the outstanding common stock of the

---

[6] Since 1997, the Advisor has received payment of more than $267 million in fees, including asset management, acquisition and development fees, as well as fees related to the securing of permanent financing.

[7] Seneff also has indirect ownership interests in the Advisor as follows:  CNL Financial Group, Inc. ("CFG"), a Florida corporation, was a direct stockholder of the Advisor until January 1, 2000, when it became an indirect stockholder.  CFG is a wholly-owned subsidiary of CNL Holdings, Inc., which is controlled jointly by Defendant James Seneff Jr. and his wife.  CNL Holdings, Inc. is not a defendant in this case.  CNL Real Estate Group, Inc. ("CREG"), a Florida corporation, is a wholly-owned subsidiary of CFG.  CREG owns approximately 53.5 percent of the shares of the Advisor's outstanding common stock.

Advisor.  Griswold is CNL's president and Chief Operating Officer, and also serves on CNL's

Board.  In the past, he was both a director and president of the Advisor.  Adams, Dustin,

McAllaster and Parsons are all directors of CNL.

  C. Count IV - Breach of Fiduciary Duty

  The Plaintiffs allege that the Advisor and the Individual Defendants have breached their

fiduciary duty to CNL and to CNL's shareholders in a number of ways.  First, they caused CNL to

invest in and enter into bad deals, including: (1) the acquisition of the outstanding capital stock of

KSL Recreation Corporation, for which CNL overpaid due to the amount of goodwill included,

and as a result of which CNL acquired an enormous tax exposure; and (2) the Marriott

acquisitions, which have caused the Plaintiffs to question the independence of the Individual

Directors and the Advisor, and as a result of certain aspects of those transactions the possibility for

CNL to recover its purchase price is greatly diminished.  Second, the Individual Defendants failed

to implement appropriate measures to ensure that the Advisor did not become a vehicle for

wrongful self-dealing, and thus caused CNL to pay fees to the Advisor far in excess of the average

industry rate, and also caused CNL to renew the Advisory Agreement with the Advisor

notwithstanding the Advisor's poor performance as measured by CNL's poor financial

performance and by certain enumerated criteria.  Third, the Individual Defendants and the Advisor

caused CNL to potentially incur an illegitimate $83 million fee to the Advisor in connection with

the KSL acquisition.  The Plaintiffs allege that many of the actions of the Advisor and the

Individual Defendants were undertaken not only to the detriment of CNL, but also for the purpose

of benefitting the Advisor and its owners.

-4-

D. History and Arguments

In a previous Order, the Court determined that these claims constitute a derivative action.[8]

(Doc. 166 at 30).  Under Maryland law,[9] a stockholder cannot initiate a derivative action unless he

has "alleged the following with particularity: (1) [his] efforts to make a demand on the Board, and

shareholders, if necessary, and the reasons for [his] failure to obtain action; or (2) the reasons why

demand would have been futile."  *Edge Partners, L.P. v. Dockser*, 944 F. Supp. 438, 442 (D. Md.

1996); *Byington v. Vega Biotechnologies, Inc.*, 869 F. Supp. 338, 343 (D. Md. 1994) (as a general

rule, Federal Rule of Civil Procedure 23.1 requires either demand or pleading of futility);

*Werbowsky v. Collomb*, 766 A.2d 123, 133 (Md. 2001) ("[A] shareholder [must] make a good

faith effort to have the corporation act directly and explain to the court why such an effort either

was not made or did not succeed.").

The Plaintiffs concede that they have not made a demand upon the Board of Directors of

CNL to bring action against the directors and officers of CNL, but they assert that doing so would

have been futile.  (Doc. 172 at 34).  The Plaintiffs allege that the "majority of the CNL directors

serving on the Original Board and the majority of the CNL directors serving on the Current Board

are so personally and directly conflicted or committed to the decisions in dispute that they cannot

reasonably be expected to respond to a demand in good faith and within the ambit of the business

---

[8] "A derivative action is a claim asserted by a shareholder plaintiff on behalf of the corporation to redress a wrong against the corporation. . . . By contrast, a direct action is a claim asserted by a shareholder, individually, against a corporate fiduciary, such as a director, to redress an injury personal to the shareholder."  *Paskowitz v. Wohlstadter*, 822 A.2d 1272, 1276 (Md. Ct. Spec. App. 2003) (internal citations and quotations omitted).

[9] In its previous Order regarding Motions to Dismiss, the Court determined that Maryland law applied to these claims.  (Doc. 166 at 29 n.43).

judgement rule," and thus assert that any demand made prior to the beginning of this litigation would have been futile.  (Doc. 172 at 35-35, 37).

The Original Board was composed of Seneff, Bourne, Adams, Dustin, McAllaster and Parsons.  The Plaintiffs allege that a majority of the Original Board (Seneff, Bourne, Adams, McAllaster and Parsons) are conflicted and thus would not respond to a demand in good faith because: (1) Seneff directly or indirectly owns 68% of the Advisor;[10] (2) Bourne directly owns 15.3% of the Advisor;[11] (3) Adams, McAllaster and Parsons are members of CNL's Audit Committee; (4) these individuals oversaw CNL's "exclusive acquisition strategy of Marriott properties" and Parsons formerly served as executive vice president and Chief Financial Officer of Marriott; and (5) all of the directors on the Original Board were signatories to certain offering documents alleged to contain materially false and misleading statements.

CNL's Current Board is composed of Seneff, Bourne, Griswold, Hutchison, McAllaster and Parsons, as well as several non-defendants: Douglas Holladay, Jack Kemp and Diana Morgan. The Plaintiffs allege that a majority of the Current Board are conflicted and thus would not respond to a demand in good faith because: (1) of the reasons discussed above regarding Seneff, Bourne, McAllaster and Parsons; and (2) Griswold (currently the Chief Executive Officer and President of CNL) and Hutchison (currently the Chief Operating Officer of CNL) are signatories to certain offering documents alleged to contain materially false and misleading statements.

---

[10] Seneff and his wife also control a majority of the interests in CFG, the owner and parent of the Advisor.

[11] The Plaintiffs allege that Seneff and Bourne sought to conceal certain breaches of fiduciary duty so that they could capitalize on their ownership of the Advisor by exploiting those breaches in the Advisor's favor.

In addition, the Plaintiffs allege that a majority of the Original Board and/or a majority of the Current Board are directly involved in the mismanagement of, and self-dealing practices within, CNL, and thus are implicated in the alleged breaches of fiduciary duties because they: (1) caused or permitted offering documents to contain materially false and misleading statements in violation of Sections 11 and 12; (2) caused or permitted CNL to engage in transactions that financially harmed CNL while benefitting certain Individual Defendants; (3) failed to take action to investigate the alleged wrongful acts or to put in place proper supervision and control mechanisms;[12] and (4) allowed CNL to pay unwarranted fees to the Advisor and to renew the Advisory Agreement notwithstanding the Advisor's mismanagement of CNL and other improper conduct.

The Defendants move to dismiss this claim arguing that the Plaintiffs have failed to show futility in a manner that satisfies the requirements of Maryland law.  More specifically, the Defendants argue that: (1) allegations of wrongdoing by existing directors is not sufficient to establish futility; (2) the Plaintiffs can only speculate that the independent directors have failed to investigate the alleged wrongful acts, which is legally insufficient to satisfy the pleading requirements for futility; and (3) the Plaintiffs' allegation that the independent directors' failure to either hire a different advisor or reduce the Advisor's fees is not sufficient to deprive the directors of their statutory power and thus does not establish futility.[13]

---

[12] The Plaintiffs allege that a majority of CNL's directors knew that certain of the CNL directors derived substantial benefits from the Advisor's management of CNL and yet failed to implement a proper system of oversight or monitoring to prevent self-dealing.

[13] The Advisor also asserts that this claim fails as to the Advisor because it is barred by Florida's economic loss rule, arguing that a claim for breach of fiduciary duty does not lie where, as

## II.     Standard of Review

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff, *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993), and must limit its consideration to the pleadings and any exhibits attached thereto.  FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  The Court will liberally construe the complaint's allegations in the Plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), and will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the rule to be applied is that, "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief."  *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)).  This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action.  *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).  Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Id*. (internal citation and quotation omitted).  "A complaint need

---

here, the claim is dependent upon a contractual relationship between the parties.

not specify in detail the precise theory giving rise to recovery. All that is required is that the

defendant be on notice as to the claim being asserted against him and the grounds on which it

rests." *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir.

1989).

### III.      Legal Analysis

Maryland law provides that the futility exception to the demand requirement

> is a very limited exception, to be applied only when the allegations or evidence
> clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay
> in awaiting a response to a demand, would cause irreparable harm to the
> corporation, or (2) a majority of the directors are so personally and directly
> conflicted or committed to the decision in dispute that they cannot reasonably be
> expected to respond to a demand in good faith and within the ambit of the business
> judgment rule.

*Werbowsky*, 766 A.2d at 144; *see also Danielewicz v. Arnold*, 769 A.2d 274, 291-92 (Md. Ct.

Spec. App. 2001) (noting that any liberal approach to the futility requirement has become more

stringent as a result of *Werbowsky*, and thus futility must be demonstrated "in a very particular

manner"); *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 140 (2nd Cir. 2004) (noting that

Maryland law characterizes the futility exception as "a narrow one").  Further, applying this law, a

court should not

> excuse the failure to make demand simply because a majority of the directors
> approved or participated in some way in the challenged transaction or decision, or
> on the basis of generalized or speculative allegations that they are conflicted or are
> controlled by other conflicted persons, or because they are paid well for their
> services as directors, were chosen as directors at the behest of controlling
> stockholders, or would be hostile to the action.

*Werbowsky*, 766 A.2d at 143-44.

Neither the Plaintiffs nor the Defendants identified with particularity the members of the

Board at the time this action was filed.  Accordingly, the Court examines both the current Board

and the previous makeup of the Board.[14]

A. Previous Board

The Court assumes that Seneff and Bourne's ownership interests in the Advisor make them

interested and non-independent,[15] rendering them unable to respond in good faith to a pre-suit

demand, thus leaving four of the six directors.[16]  As to these directors, the only allegations are that

they were members of CNL's Audit Committee, participated in the alleged wrongdoing, and

Parsons formerly worked for Marriott.  Maryland law specifically rejects the excusing of demand

"simply because a majority of the directors approved or participated in some way in the challenged

_____

[14] It appears, at least from CNL's Memorandum, that the Defendants believe that demand should have been made to the current Board.  (*See* Doc. 186 at 25).  However, in an abundance of caution, the Court will examine both the current and the previous Board.

[15] "A director is considered interested when, for example, he will receive a personal financial benefit from a transaction that is not equally shared by the stockholders . . . ."  *McCall v. Scott*, 239 F.3d 808, 817 (6th Cir. 2001).  Seneff and Bourne are also alleged to own a "de minimis number of CNL shares either directly or indirectly."  (Doc. 172 at 38).  The Plaintiffs do not, however, appear to allege that their ownership of CNL shares factors into the futility analysis.

[16] The court in *Werbowsky* noted, however, that the demand requirement does not necessarily exclude interested non-independent directors:

> [Pre-suit demand] gives the directors -- even interested, non-independent directors -- an opportunity to consider, or reconsider, the issue in dispute.  It may be their first knowledge that a decision or transaction they made or approved is being questioned, and they may choose to seek the advice of a special litigation committee of independent directors . . . or they may decide, as a business matter, to accede to the demand rather than risk embarrassing litigation. . . . If a demand is made and refused, that decision, and the basis for it, can be reviewed by a court under the business judgment rule standard.

*Werbowsky*, 766 A.2d at 144.

transaction or decision . . . ." *Werbowsky*, 766 A.2d at 143.  Maryland law also rejects general

allegations of hostility as insufficient to excuse demand, *id*. at 144, but such general allegations are

all that the Plaintiffs offer.[17]   Finally, the Plaintiffs have given neither factual nor legal support for

their theory that because certain directors served on a management and oversight committee or

previously worked for a company with whom CNL now conducts business, they could not have

been expected to respond to a demand in good faith.  Accordingly, as to these individuals, the

Plaintiffs have failed to clearly establish in a particular manner that a pre-suit demand would have

been futile.[18]

---

[17] *See* Doc. 172 at 36:

> A majority of the Original Board, and alternatively, a majority of the Current Board,
> cannot be expected to have acted in the best interest of CNL in their consideration of
> a demand because they are directly involved in the mismanagement of CNL and self-
> dealing practices within CNL as alleged herein and by their actions, are deeply
> implicated in the breach of fiduciary duty claims brought derivatively in this action.

*See also id*. at 37:

> Because the majority of CNL Directors is deeply and directly involved in the
> wrongdoing alleged herein, and had ample opportunity to consider and reconsider the
> Advisor's self-dealing misconduct in managing CNL, it is highly unlikely that a
> demand by the Plaintiffs would have led to a resolution of the dispute prior to
> litigation.

[18] In support of their argument, the Plaintiffs cite *Felker v. Anderson*, 2005 WL 602974 (W.D.
Mo. Feb. 11, 2005), wherein the court denied a motion to dismiss for the plaintiff's failure to make
a pre-suit demand because the plaintiff alleged with particularity that the defendants approved of the
dissemination of false or misleading press releases, violated state law and fiduciary duties, did not
seek to recover the damages suffered by the company, and concealed information from the public.
*Id*. at *3.  The Court does not find this opinion persuasive for two reasons.  First, it is not clear how
to square that holding with *Werbowsky*'s clear admonition that a court should not "excuse the failure
to make demand simply because a majority of the directors approved or participated in some way in
the challenged transaction or decision." *Werbowsky*, 766 A.2d at 143-44.  Second, the Court cannot
find that sort of allegation sufficient in this case because the Plaintiffs have failed to provide any

B. Current Board

Assuming that Seneff and Bourne are interested and non-independent based on their ownership interests in the Advisor,[19] that leaves seven of the nine Board members against whom the Plaintiffs do not present any allegations other than those that are either the same as, or essentially the same as, those the Court has already rejected as insufficient.[20]  Therefore, the Plaintiffs have failed to clearly establish that it would have been futile to present a pre-suit demand to the current Board of CNL.

IV.     **Conclusion**

The Plaintiffs argue that any pre-suit demand on CNL's Board would have been futile. Ultimately, however, their arguments are long on rhetoric and short on concrete factual support. Instead of offering the clear demonstration, supported with particular factual evidence as is required by Maryland law, the Plaintiffs instead point to certain factors (which, under Maryland law, are insufficient) and simply repeatedly state that based on those factors, demand would have

---

factual support as to *how* the Defendants' participation in the alleged wrongdoing renders them unable to respond to a pre-suit demand in good faith.  Merely alleging participation in allegedly wrongful acts cannot, without more, be sufficient, especially because, as the court in *Werbowsky* noted, the demand itself may actually provide the directors with notice that the action in question is being challenged and give them an opportunity to investigate the matter or seek legal advice prior to being forced to engage in litigation.  *See Werbowsky*, 766 A.2d at 144.

[19] Seneff, Bourne, Griswold and Hutchison are also alleged to own a "de minimis number of CNL shares either directly or indirectly."  (Doc. 172 at 38).  The Plaintiffs do not, however, appear to allege that their ownership of CNL shares factors into the futility analysis.

[20] Alternatively, the Court could assume that Seneff, Bourne, Hutchison and Griswold are all interested and non-independent due to their ownership interests in the Advisor.  However, that would still leave five of the nine Board members, and thus the resulting analysis would be the same.

been futile.[21]  Not only are the Plaintiffs' asserted bases for futility insufficient, but even assuming they were sufficient to establish a conflict, the Plaintiffs wholly failed to offer any factual support demonstrating how or why those bases clearly demonstrate that a majority of the directors could not reasonably have been expected to respond in good faith and within the ambit of the business judgment rule to a pre-suit demand.[22]  Because the Plaintiffs failed to make a pre-suit demand before bringing this derivative action, and because they have failed to establish that such demand would have been futile, their breach of fiduciary duty claim against the Individual Defendants and the Advisor must be dismissed.  Accordingly, it is

ORDERED THAT the Defendants' Motions to Dismiss Count IV (Docs. 185, 187, 188, 190, and 191) are GRANTED.  Because the Plaintiffs have had an opportunity to amend their

---

[21]  Indeed, in the space of less than four pages in their Complaint, the Plaintiffs repeat essentially the same allegation -- that a majority of CNL's directors were either so conflicted or so committed to the alleged wrongdoing that they would not have responded in good faith to a pre-suit demand -- at least seven times.

[22]  The Plaintiffs' approach here, their failure to make a pre-suit demand and their post-hoc attempt to justify that failure violates the spirit of the reason why a pre-suit demand is required:

> To prevent abuse of this remedy [the derivative form of action] . . . equity courts established as a precondition "for the suit" that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions. . . . The purpose of the demand requirement is to afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.

*Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 95-96 (1991) (internal citations, quotations and punctuation omitted); *see also Scalisi*, 380 F.3d at 140 ("[T]he demand requirement is an important device in preventing minority shareholders from controlling corporate litigation against the interests of the corporation and the judgment of the directors.").

Complaint to properly allege futility and have failed to do so, Count IV is dismissed with prejudice.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 13, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party